Dear Honorable Nathaniel J. McFadden Maryland Senate 442
You have requested our opinion on two questions concerning the disposition of interest earned on State matching funds contributed to the Maryland Water Quality Revolving Loan Fund and the Maryland Drinking Water Revolving Loan Fund. Both questions concern interest income credited to those funds which was earned on State funds that had been deposited in the revolving funds before the deadline for meeting a federal match requirement. In particular, you ask:
(1) Can the interest income credited to the revolving funds be transferred to the general fund?
(2) If that interest income cannot be transferred to the general fund, can it be used to satisfy future matching funds requirements — i.e., can an equivalent amount be withheld from future transfers that would otherwise be made from the general fund to the revolving funds? If the State were to follow this course, are there potential adverse consequences to the State, such as the loss of federal funding?
In our opinion, the answers to your questions are as follows:
(1) Interest income credited to the revolving funds may not be transferred to the State's general fund.
(2) If the State were to withhold funds equivalent to the amount of that interest from future transfers to the revolving funds, the State might forfeit part of the federal contribution to the revolving funds.[1]
 I Background
A. Revolving Loan Funds
The Water Quality Financing Administration of the Maryland Department of the Environment administers two revolving loan funds. The Maryland Water Quality Revolving Loan Fund ("WQRLF") provides loans at advantageous rates and terms to local governments and other borrowers to cover the costs of wastewater facilities and other purposes authorized by federal clean water legislation. Annotated Code of Maryland, Environment Article ("EN"), § 9-1605. Similarly, the Maryland Drinking Water Revolving Loan Fund ("DWRLF") provides loans at advantageous rates and terms to local governments and other borrowers to cover the costs of water supply systems and other purposes authorized by the federal Safe Drinking Water Act. EN § 9-1605.1.
The use of state revolving loan funds for these purposes originated in the late 1980s when amendments to the federal Clean Water Act phased out a decades-old program under which the federal government made grants for the construction of local wastewater facilities.
In its place, Congress substituted federal "seed money" for state revolving loan funds. The Environmental Protection Agency ("EPA") was charged with administering the program.
In response, the Maryland General Assembly created the WQRLF and established the Water Quality Financing Administration to administer it. Chapter 535, Laws of Maryland 1988; see Floor Report of Senate Budget and Taxation Committee for House Bill 622 (1988).
Five years later, the DWRLF was created in response to federal legislation that made funds available under the Safe Drinking Water Act. Chapter 396, Laws of Maryland 1993.
In order to qualify for federal contributions to the revolving funds, the State has entered into an operating agreement, as well as a series of grant agreements, with the EPA.
See, e.g., Capitalization Grant Operating Agreement (1989); Grant Agreement between U.S.
Environmental Protection Agency and Maryland Department of the Environment, No. CS-24000101-0 (July 25, 2001). As part of the operating agreement, the State agreed to manage the revolving funds in accordance with the Clean Water Act and applicable EPA regulations. Operating Agreement, Part II.B.8.
B. Matching Funds Requirement
Under the federal statutes, federal money is allocated to the states for revolving funds according to a statutory formula. 33 U.S.C. § 1384;42 U.S.C. § 300j-12(a)(1)(D). Funds are transferred to participating states on a quarterly basis. 33 U.S.C. § 1381(b).
The federal statutes require that, as part of a capitalization grant agreement, a state agrees to provide matching funds. In particular, a state must deposit in each revolving fund 20 percent of the amount of the federal capitalization grant "on or before the date on which each quarterly payment [of federal funds] will be made."33 U.S.C. § 1382(b)(2); 42 U.S.C. § 300j-12(e). EPA regulations require that a state identify the source of the matching funds in its grant application. 40 C.F.R. § 35.3135(b)(3), § 35.3550(g)(1).
In recent years, the General Assembly has approved a general fund appropriation for each revolving fund to meet the matching funds requirement. See, e.g., Chapter 204, § 1, Laws of Maryland 2000 at p. 1149 (general fund appropriations for WQRLF and DWRLF for fiscal year 2001). During the fiscal year, the Water Quality Financing Administration transfers funds from that appropriation to the pertinent revolving fund to satisfy the match requirement.
A recent legislative audit of the Maryland Department of the Environment for fiscal years 1999 through 2001 noted that funds were transferred from the State's general fund to the revolving funds at the beginning of the fiscal year well in advance of the receipt of federal money.[2] Following the transfer, interest earned on the transferred funds was credited to the revolving funds. The Legislative Auditor estimated that approximately $2 million in interest income on State matching funds was credited to the revolving funds during fiscal years 1999 through 2001. See Audit Report for Department of the Environment (June 2002) at p. 10.
 II Analysis
Both of your questions are based on the premises that (1) State funds have been contributed to a revolving fund in advance of the federal contribution and before the last date that the State match would be due under federal law, (2) a specific identifiable amount of interest has been credited to the revolving fund attributable to those State funds for the period between their actual deposit in the revolving fund and federal deadline for the match, and (3) an amount equivalent to that interest remains in the revolving fund. Both questions concern the use or disposition of that interest.
A. Transfer of Interest Income to General Fund
You first ask whether the interest may be transferred to the general fund.
It is clear that unspent money in a revolving fund is ordinarily to remain in the fund.
Under State law, the unspent balance of an appropriation normally reverts to the general fund at the conclusion of the fiscal year. Annotated Code of Maryland, State Finance Procurement Article ("SFP"), § 7-302. However, the WQRLF and the DWRLF were each created as "a special, nonlapsing fund which is not subject to [SFP] § 7-302 . . ." EN §§ 9-1605(a)(2), 9-1605.1(a)(2). The unspent portion of an appropriation that State or federal law "dedicates to a special purpose" does not revert to the general fund, but remains in the special fund. SFP § 7-304. More specifically, State law provides that investment earnings from the WQRLF and the DWRLF are to be retained in the funds. EN §§ 9-1605(a)(5), 9-1605.1(a)(5). In addition, those statutes explicitly provide for the deposit into the revolving funds of "interest or other income earned on the investment of moneys" in the funds. EN §§ 9-1605(b)(5), 9-1605.1(b)(5).
Consistent with the federal laws that prompted establishment of these funds, the State statutes governing the revolving funds list permissible uses of the moneys contained in the funds. See EN §§ 9-1605(d),9-1605.1(d). Nothing in those statutes suggests that the portion of the revolving fund attributable to interest earnings could be transferred to the State's general fund.[3] Each statute contains a catch-all provision permitting funds to be used "for any purpose" authorized by the federal Clean Water Act or the Safe Drinking Water Act. EN §§ 9-1605(d)(8), 9-1605.1(d)(9). However, the referenced federal statutes do not permit the transfer of funds from the revolving funds to the State's general fund other than for one of the uses permitted by the federal legislation.[4]
The EPA has provided guidance for grant recipients that directly addresses your question. In particular, the EPA has advised that "once funds are deposited into a [state revolving fund], any interest earned can only be expended by the [revolving fund] for one of the seven types of assistance activities listed in [33 U.S.C. § 1383(d)]." EPA Office of Municipal Pollution Control, Cumulative Final Questions and Answers Concerning State Revolving Fund Program (July 1990), II.b.6. at p. 25.[5]
B. Withholding Future State Transfers to the Revolving Funds
You have asked whether the State could withhold from future transfers to a revolving fund an amount equivalent to the interest earned on prior "early" State contributions. In other words, could the State rely on that interest to satisfy all or part of its match requirement for a future federal grant to the revolving fund?
The EPA recognizes an "overmatch" if the amount deposited by a state into a revolving fund exceeds the required match amount. In that circumstance, the excess amount may be counted toward future match requirements. 40 C.F.R. § 35.3135(b)(4). Thus, the question is whether a "premature" deposit of the State match results in an overmatch that would be recognized by the EPA under that regulation.
The federal statutes and regulations require that the State's match be deposited in the revolving fund "on or before the date" of the federal grant payment. 33 U.S.C. § 1382(b)(2); 42 U.S.C. § 300j-12(e);40 C.F.R. § 35.3135(b)(1). Federal law thus provides a deadline for the deposit of the State match, but also contemplates that the match amount could be deposited at an earlier time. From that perspective, deposit of the State match was not "premature" and does not generate an overmatch. In addition, as outlined above, under the EPA guidelines, interest credited to a revolving fund is considered a part of the revolving fund and is not attributed to State funds.
In our opinion, the EPA would likely not count the amount of interest earned on prior contributions to a revolving fund in determining whether the State has satisfied a current match requirement. If the State were to rely on interest previously credited to the fund to satisfy a current match requirement, the EPA might find "noncompliance" with the grant conditions and withhold federal funds from the revolving funds.40 C.F.R. § 35.3170, § 35.3585. The EPA could also pursue other remedies against the State that might affect other federally-assisted programs. See 40 C.F.R. § 31.43(a) (general remedies for noncompliance with grant conditions).
 III Conclusion
For the reasons outlined above, it is our opinion that:
(1) Interest income credited to the revolving funds may not be transferred to the State's general fund.
(2) If the State were to withhold funds equivalent to the amount of that interest from future transfers to the revolving funds, the State might forfeit part of the federal contribution to those funds.
J. Joseph Curran, Jr. Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] This opinion confirms advice previously provided by Assistant Attorneys General assigned to the Maryland Department of the Environment.
[2] You have not asked, and we do not address, whether it was permissible under State law for the Department to transfer matching funds from the general fund to the revolving funds at the beginning of the fiscal year in anticipation of quarterly federal payments, instead of making quarterly transfers synchronized with the federal payment schedule. During the audit, the Legislative Auditor disputed the permissibility of the Department's practice, and the Department has agreed to stagger its transfers to the revolving funds in the future.
[3] The statute creating the WQRLF specifies that the fund may be used only:
(1) To make loans, [on certain conditions] that:
(i) The loans are made at or below market interest rates, including interest free loans, at terms not to exceed 20 years;
(2) To buy or refinance debt obligations of local governments at or below market rates, if such debt obligations were incurred after March 7, 1985;
(3) To guarantee, or purchase insurance for, bonds, notes, or other evidences of obligation issued by a local government for the purpose of financing all or a portion of the cost of a wastewater facility, if such action would improve credit market access or reduce interest rates;
(4) As a source of revenue or security for the payment of principal and interest on bonds issued by the Administration if the proceeds of the sale of such bonds will be deposited in the Water Quality Fund;
(5) To earn interest on Water Quality Fund accounts;
(6) To establish a linked deposit program to promote loans for controlling nonpoint sources of pollution and protecting the quality of the waters of the State;
(7) For the reasonable costs of administering the Water Quality Fund and conducting activities under Title VI of the Federal Water Pollution Control Act; and
(8) For any other purpose authorized by Title VI of the Federal Water Pollution Control Act or § 302 of the federal Safe Drinking Water Act.
EN § 9-1605(d). The statute creating the DWRLF contains virtually identical restrictions. See EN § 9-1605.1(d). Both statutes essentially reiterate the restrictions set forth in federal law for state revolving funds. See 33 U.S.C. § 1383(d);42 U.S.C. § 300j-12(f).
[4] Of course, if funds not designated as part of the State's match were erroneously deposited in a revolving loan fund, those funds could be redirected to the appropriate destination.
[5] The EPA guidance posed the following question and answer:
Q: Can a [state revolving fund] pay interest earned by the [fund] to the State Treasury (or other State account) if required by State law?
A: No. Once funds are deposited into a [State revolving fund], any interest earned can only be expended by the [fund] for one of the seven types of assistance activities listed in [33 U.S.C. § 1383(d)]. However, interest earned on State funds prior to deposit into [the fund] would be paid according to State law. *Page 11